[No. 32174. Department One. January 8, 1953.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES E. MASON *et al., Appellants.*[1]

[1]Reported in 252 P. (2d) 298.

*H. Sylvester Garvin, Anthony Savage, Jacob Kalina,* and *Michael S. Curtis,* for appellants.

*Charles O. Carroll, Frank Harrington,* and *Leo F. Richter,* for respondent.

MALLERY, J.—In information No. 26841, James E. Mason and Ashley A. Griffith were charged jointly with the crime of grand larceny by bunco game committed in Seattle, on or about October 24, 1951, against one Henry Mattson.

In informations Nos. 26839 and 26840, defendants Mason and Griffith were charged separately with grand larceny committed on or about November 1, 1951, by bringing into King county $15,800 in lawful money of the Dominion of Canada, knowing the same to have been obtained from William Watson by bunco game practiced in the city of Vancouver, British Columbia.

The three causes were consolidated for trial. Defendant Mason was convicted on informations Nos. 26839 and 26841, and defendant Griffith was convicted on informations Nos. 26840 and 26841. They appeal.

Evidence that either of the defendants brought the sum of $15,800 or any part thereof in Canadian currency into King county is completely lacking. The sum of $12,400 in United States currency was found by the police officers in the innkeeper's safe at the Hungerford hotel in the city of Seattle, under claim check No. B-4111, which was taken from the person of Griffith at the time of his arrest. William Watson testified at length as to a horse race bunco game practiced upon him by the defendants by which they swindled him out of $15,800 of Canadian money. No further connection of any kind is shown or traced in the record between the crime committed in Vancouver, British Columbia, and the possession of the $12,400 in United States currency in Seattle.

■ We can, therefore, dispose of the two separate convictions of both Mason and Griffith for bringing stolen money into the state of Washington, upon the simple ground that the state failed to prove the charges beyond a reasonable doubt or at all. The bare possession of $12,400 of *unidentified* United States currency sustains no inference as to its source. Upon many occasions, this court has quoted the following with approval:

"A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and are so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent, merely, with that theory, for that may be true, and yet they may have no tendency to prove the theory. This is the well-settled rule." *Ashbach v. The Chicago, Burlington & Quincy Ry. Company,* 74 Iowa 248, 37 N. W. 182.

Accordingly, the judgments and sentences on informations Nos. 26839 and 26840 are reversed, and the causes dismissed.

In cause No. 26841 the defendants were jointly charged with having obtained the sum of three thousand dollars from Henry Mattson by a horse race bunco game.

Mattson, a Finnish fisherman, arrived in Seattle from Cordova, Alaska, on October 14, 1951. The next day he

deposited three thousand dollars in the First National Bank of Seattle, Main Branch. The defendant Mason scraped an acquaintance with him later in the day, and on several subsequent meetings cultivated his confidence. On October 23, 1951, while they were walking down the street, Mason pretended to find a wallet which contained a substantial sum of money. They ascertained from its contents that it belonged to a man who was staying in room 828 at the Olympic hotel. Defendant Mason and Mattson took the wallet to the owner, the defendant Griffith. He appeared so grateful that he offered to let them in on his horse race betting activities by which he was making large sums of money. They soon won one hundred and seventy thousand dollars according to the reports given to Mattson, but he was told that they had to exhibit forty thousand dollars before they could collect their winnings, in order to prove that they could have paid their bets had they lost. Then Mattson withdrew his three thousand dollars from the bank in Seattle, and turned it over to Griffith. That did not make enough for his share so he flew back to Cordova to get seventeen thousand dollars he had on deposit there. His banker, however, dissuaded him from advancing any further money. He then returned to Seattle and made a full disclosure of the bunco game to the police. He described Mason, Griffith, and one Monette, the purported "banker at the horse race office" who was never apprehended. A number of police officers had Mattson under constant surveillance from then until the arrest of defendants.

Defendant Griffith contacted Mattson for the purpose of getting the seventeen thousand dollars for which Mattson had gone to Cordova. They made an appointment to meet in the lobby of the Olympic hotel. They met as planned while members of the police force waited within hearing distance. When Mattson started talking with Griffith, he unbuttoned his vest, which was a prearranged signal that he was then talking to one of the members of the bunco team.

The police officers overheard Griffith ask Mattson if he had procured the seventeen thousand dollars, and if he had

brought it with him to Seattle. Receiving affirmative answers, Griffith told Mattson to stay in the lobby of the hotel until the arrival of Monette, when they would proceed with the transaction. Griffith then excused himself, and left the lobby by the Fourth avenue entrance where he met Mason, who, after talking with him a moment, accompanied him down the street in deep conversation. The police officer then placed them both under arrest.

The defendants were searched incident to the arrest, and a number of articles were seized. A claim check, taken from the person of defendant Griffith, led to the discovery of the $12,400 deposited with the innkeeper at the Hungerford hotel. This formed the bases for informations Nos. 26839 and 26840.

Defendant Griffith contends that his arrest was illegal and that the trial court erred in admitting in evidence exhibits taken from his person without a warrant of arrest. He relies upon the rule of *United States v. Coplon*, 185 F. (2d) 629. We think this case and the other cases of similar import cited in defendants' brief, are not in point for the reason that they involve an interpretation of the Federal statute creating the authority of the agents of the Federal Bureau of Investigation.

In that case the court held the arrest was illegal because the agents had ample time to procure a warrant of arrest, and that it was necessary to do so in such cases to comply with the requirements of the statute. In the instant case, we are not concerned with the Federal statute. We are, however, concerned with the existence of probable cause for the arrest.

■ The rule in Washington is clear, and its last full statement occurs in *State v. Young*, 39 Wn. (2d) 910, 239 P. (2d) 858, which cited with approval *State v. Hughlett*, 124 Wash. 366, 214 Pac. 841, as follows:

" ' . . . But in cases amounting to a felony, if the officer believe, and have good reason to believe, that a person has committed, or is about to commit, or is in the act of committing the crime, then he may arrest without a warrant. But the arresting officer must not only have a real

belief of the guilt of the person about to be arrested, but such belief must be based upon reasonable grounds. Proper cause for arrest has often been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. . . .

" 'It has always been held that a peace officer, when he makes a lawful arrest, may lawfully, without a search warrant, search the person arrested and take from him any evidence tending to prove the crime with which he is charged.' "

Mattson had made a full disclosure to the police of the horse race bunco game practiced upon him. He had described the members of the bunco team. The police knew everything about the crime but the identity of the criminals. They were stationed in the lobby where Mattson met Griffith by appointment. When Mattson gave the agreed signal designating Griffith as one of the bunco team, the last bit of necessary information against him had been supplied. These facts constitute probable cause for Griffith's arrest under the Washington rule.

Assignments of error Nos. 3 and 4, made on behalf of defendant Mason, are as follows:

"The trial court erred in holding that the arrest of the defendant, Mason, was legal, where there was no probable cause and no warrant of arrest.

"The trial court erred in admitting evidence taken from the person of the defendant, Mason, subsequent to an illegal arrest."

These two assignments are argued together in the brief. The question of the legality of the arrest of Mason is treated at length, but nowhere is there any inkling given as to the articles taken from him and introduced in evidence. This fails to comply with Rule on Appeal 42 (6), 34A Wn. (2d) 44, which provides *inter alia*:

"In referring to any portion of the record on appeal, the brief must indicate clearly and definitely the portion of the record to which reference is made. . . . if the writer of the brief refers to an exhibit, the number or letter thereof shall be given."

Accordingly, we treat these assignments of error as if no exhibits were seized. This leaves only a claim of illegal arrest, which by itself, of course, has no significance.

■ Assignment of error No. 7 is directed to the joining of the three informations for trial over the objection of the defendants. Joinder of informations for trial is within the discretion of the trial court (*State v. Miles*, 34 Wn. (2d) 55, 207 P. (2d) 1209) in situations falling within the purview of RCW 10.37.060 [*cf.* Rem. Rev. Stat., § 2059], which reads:

"When there are several charges against any person, or persons, for the same act or transaction, *or for two or more acts or transactions 'connected together, or for two or more acts or transactions of the same class of crimes* or offenses, which may be properly joined, instead of having several indictments or informations the whole may be joined in one indictment, or information, in separate counts. If two or more indictments are found, or two or more informations filed in such cases, the court may order such indictments or informations to be consolidated." (Italics ours.)

Information No. 26841 is laid under subd. 2 of RCW 9.54-.010 [*cf.* Rem. Rev. Stat., § 2601], while informations Nos. 26839 and 26840 are laid under subd. 5 of the same statute. All of them charge grand larceny. Informations Nos. 26839 and 26840 relate to the same transaction. The three crimes charged are connected and of the same class. It was, therefore, permissible to join them for trial.

■ Assignment of error No. 8 reads as follows:

"The court erred in admitting testimony of Witness Bihon with respect to the alleged plan, scheme, or design, where such testimony was inflammatory and prejudicial since Defendant Mason was not present at any transaction involving Mr. Bihon."

The trial court in an appropriate instruction limited the applicability of the evidence complained of to defendant Griffith, against whom it was admissible. Thus limited, its reception was not error.

■ Assignment of error No. 9 is that the trial court erred in its interpretation of the law in giving instructions Nos. 9, 14, 20, and 20a. Instruction 20 is the only one set out in the brief. The others will, therefore, not be considered. Rule

on Appeal 42 (1) (f), 34A Wn. (2d) 44. Instruction No. 20 relates to informations Nos. 26839 and 26840, which we have heretofore dismissed for a different and sufficient reason. All of the remaining assignments of error relate to the dismissed informations, and, therefore, need not be discussed.

The judgment and sentence in cause No. 26841 is affirmed.

SCHWELLENBACH, C. J., GRADY, DONWORTH, and WEAVER, JJ., concur.

February 20, 1953. Petition for rehearing denied.

[1]Reported in 252 P. (2d) 244.