[No. 39380.    Department Two.    October 19, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. DUANE HASTINGS
BELLOWS, *Appellant*.*

*Morrison, Huppin, Ewing & Anderson (Patrick K. Shine*,
of counsel) and *MacGillivray, Jones, Clarke & Schiffner*
(*W. Kenneth Jones*, of counsel), for appellant (appointed
counsel for appeal).

*George A. Kain* and *John P. Murray*, for respondent.

OTT, J.†—On October 4, 1966, Duane Hastings Bellows

*Reported in 432 P.2d 654.

---

†Judge Ott is serving as a judge pro tempore of the Supreme Court
pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

and William Richard Bain were jointly charged with four counts of grand larceny and one count of petit larceny. William Richard Bain pleaded guilty to count 1 of the information. On November 7, an amended information was filed charging only Duane Hastings Bellows of the original four counts of grand larceny. Bellows pleaded not guilty. Prior to the trial of the cause Bellows moved to dismiss the cause on the ground that the officers, at the time, had no probable cause to make an arrest without a warrant, and to suppress the evidence because of an alleged illegal search and seizure. After a pretrial hearing the court denied both motions. The cause was tried to the jury on November 21, 1966, and on November 22, the jury returned a verdict of guilty on counts 1, 2, and 3. From the entry of judgment and sentence Duane Hastings Bellows appeals.

Appellant first assigns error to the court's failure to dismiss the charges upon the grounds indicated and to suppress the evidence. At the pretrial hearing the trial court found from the evidence adduced that the officers did have probable cause to arrest the appellant without a warrant. The record establishes that the knowledge the arresting officers had prior to arrest was substantially as follows. On July 9, Ronald E. Davis (Duane Hastings Bellows) had registered at the Maple Leaf Motel near Spokane for a single twin-bed unit. His companion (William Richard Bain) registered as William Richard Lane. They occupied the unit through July 20, 1966. The owner and operator of the motel had become suspicious of the conduct of the two men and called the sheriff's office. Lieutenant Edmund W. Braune, investigating for the sheriff's office, learned from Mrs. McKinnon, the owner, that the two men had departed by taxi about 10 p.m. on the night of July 17. They returned the next morning by taxi at approximately 5 a.m. One carried a case which appeared to be a typewriter case. The other had a smaller plastic case. The next day, while cleaning their room, the owner observed the typewriter case. She also had observed large rolls of money. On July 18, the two men had returned with first one automobile and

then another. A guest in the motel told the officer that the two men had been spending a great deal of money, that they had given her son $70 in coins and had him exchange the coins for currency at a local bank, that she had observed the two carrying a bag for either a camera or a tape recorder, that Mr. Lane (Bain) had awakened her husband on the morning of July 18 to give him a bottle of "real fancy whisky" in a velvet bag, and that Mr. Neaman, her husband, had accompanied the two men to a car lot where a Ford was exchanged for an Oldsmobile. Lieutenant Braune later went to the car lot where he learned that the two men had paid $400 cash for the automobile and that they had a large roll of money. He also learned that the two men had given different names on the successive automobile transactions. Lieutenant Braune then contacted the detective division of the Spokane Police Department where he was advised that several breakins and burglaries had occurred on the weekend of July 17. A sum of money in excess of $2,000 in coin and currency, a typewriter case, a tape recorder and a bottle of Crown Royal whisky in a purple container were among items reported stolen. Thereafter, Lieutenant Braune and two other officers went back to the motel to further observe the suspects. Shortly after their arrival Lieutenant Braune saw the Oldsmobile being driven past the motel. The officers followed, overtook it and arrested the two men at approximately 10 p.m. on July 20, 1966.

In determining whether an officer has probable cause to arrest without a warrant, we are governed by the following rules. An officer need not have knowledge of evidence sufficient to establish guilt beyond a reasonable doubt, but only reasonable grounds for suspicion coupled with evidence of circumstances to convince a cautious or disinterested person that the accused is guilty. *State v. Green*, 70 Wn.2d 955, 958, 425 P.2d 913 (1967); *State v. Massey*, 68 Wn.2d 88, 89, 411 P.2d 422 (1966). We are concerned with probabilities which are not technical, but are factual and practical considerations of everyday life on

which prudent men, not legal technicians, act. *Brinegar v. United States,* 338 U.S. 160, 175, 93 L. Ed. 1879, 69 Sup. Ct. 1302 (1949). Applying these rules to the related facts (all known to the officers at the time of making the arrest), we hold that the officers had probable cause to arrest without a warrant.

Appellant next asserts that the search of the motel unit without a warrant was illegal and hence the trial court erred in failing to suppress the evidence. In this regard appellant contends that he was coerced when he signed a document entitled "Consent to Search." He contends that before the officers obtained his written consent they had implied that if it became necessary to obtain a search warrant from a judge in the early hours of the morning that this inconvenience to the court might prejudice him. The testimony of Lieutenant Braune on cross-examination in this regard is quoted as follows:

Q. Yes. Now, you mentioned in your previous testimony that you told, I believe, Mr. Bain and I don't know whether you told Mr. Bellows or not, that you could get a search warrant to go out and search this room. Isn't that true? A. He mentioned a search warrant. Q. He did? A. He mentioned a search warrant and I said I could get one. Q. And you told him you could get one and you told him how you could get one? Did you tell him how you could get one? A. I don't know if I outlined for him the procedure on a search warrant. Is that what you mean? Q. Did you tell him how you could obtain one—that's what I asked? A. I don't believe I did tell him. I told him I could get a judge up and get a search warrant. Q. Isn't that what you told him—you could get a judge out of bed that night and get a search warrant if you had to? A. I told him I could. Q. Did you further tell him that if you had to do that it might go a little harder with him if you had to wake a judge up at night? A. No. Q. But you did explain to him you would have to get a judge up to get a search warrant? A. I did. Q. Wasn't your purpose in doing that to try, let's say, to get Mr. Bain to sign this consent—which would be easier than getting a judge up? A. No, it was to advise them that I could get a search warrant. Q. You didn't tell him it might go hard with him if you had to have that done? A. You just asked me that and I said no.

Appellant testified at the pretrial hearing. He did not refute Lieutenant Braune's testimony as set out above. The trial court did not err in finding no coercion. *In re McNear v. Rhay*, 65 Wn.2d 530, 536, 538, 398 P.2d 732 (1965).

■ Appellant next asserts that the court erred in failing to suppress the evidence for the reason that he was not informed by the officers, prior to signing the written consent to search the motel unit, that he was entitled to have an attorney forthwith. The trial court did not err in refusing to suppress the evidence. It is not disputed that William Richard Bain had equal right to the occupancy and use of the motel unit and that he knowingly and intelligently gave written consent to search. Where two persons have equal right to the use or occupancy of the premises, either one can authorize a search and the evidence thus seized can be properly admitted into evidence against either or both parties. *United States v. Goodman*, 190 F. Supp. 847, 850 (N.D. Ill. 1961).

Finally, appellant contends that the court erred in not dismissing the amended complaint for the reason that an information was not filed against him within 30 days after his arrest and no "good cause" was shown as required by RCW 10.37.020. Appellant was arrested on July 20, 1966. On July 21 a complaint was filed in justice court charging appellant with these felonies. Counsel was appointed to represent appellant. The record does not indicate when the justice court proceeding was heard, but it does indicate that from July 21, 1966, to September 26, 1966, appellant had indicated to both his appointed counsel and to the deputy prosecutor that he intended to plead guilty. When he changed his mind in this respect an information was promptly filed on October 4.

■ The filing of the complaint in the justice court, the day after the arrest, apprised appellant of the nature of the charges against him. When the information was filed the charges were substantially the same as those in the justice court complaint. In addition to this, the appellant had informed his own counsel as well as the prosecuting attorney

that he intended to plead guilty. The timely filing of the complaint in the justice court together with his expressed intention to plead guilty constituted "good cause" sufficient to satisfy the statute.

We find no merit in any of the assignments of error. The judgment is affirmed.

FINLEY, C. J., HUNTER, HAMILTON, and NEILL, JJ., concur.