[No. 40292.    Department One.    June 12, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT W.
SARBER, *Appellant.*\*

*J. Hartly Newsum* and *Farris, Bangs & Horowitz,* for
appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Patricia G. Harber,* for respond-
ent.

DONWORTH, J. †—Defendant, Robert W. Sarber, appeals
from the judgment and sentence entered on his conviction
by jury of the crime of grand larceny. He was sentenced to
a maximum of 15 years in a state penal institution.

On the morning of November 10, 1967, Detective Joe
Duty and Detective Anchors were at the Fort Lawton phar-
macy investigating a safe burglary. About that time, Detec-
tive Owen C. McKenna of the Seattle Police Department
received a telephone call from an unnamed but reliable

\*Reported in 456 P.2d 312.

†Judge Donworth is serving as a judge pro tempore of the Supreme
Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

informant. This informant told McKenna that a yellow automobile with the Washington license number LBA 871 had pulled up in front of a home at 4110 Linden Avenue North and that the two white male occupants therein were acting suspiciously. Three to five minutes later, McKenna testified that the same informant called him again and told him that the automobile had gone into an alley in back of the Linden Avenue home. Further, the informant told him that the two occupants had taken a multicolored suit bag, a long knotted rope, and the back seat of the car from the automobile. Then, the occupants took out what appeared to be a small safe and carried it into the basement of the home.

Following the receipt of this information, McKenna went from his office to the burglary and larceny office of the police department and notified Sergeant Rhodes, who was in charge of the office. Sergeant Rhodes relayed the information to Detective Duty and his fellow officer, who were then investigating the pharmacy burglary and asked them to investigate the activity at the Linden Avenue address. At this time, Detective Duty believed that the safe reported by the informant might be the safe stolen from the pharmacy. On their way to the Linden Avenue address, Detective Duty radioed for additional patrol car assistance and waited near the designated home until the assistance arrived. Upon their arrival, one of the patrol cars went down the alley and Detective Duty and another patrol car went down the street in front of the home. As they approached the home, defendant emerged therefrom and went to his car, which was the automobile identified by the informant, parked in the street in front of the home. Duty was familiar with defendant from his prior investigation of safe burglaries in the Seattle area and was also aware that the Linden Avenue address was a congregating place for known criminals.

The officers saw defendant as he was about to enter his car and ordered him to put his hands on the car. As Detective Duty approached defendant, he noticed that he had a silvery gray substance on his hands which Duty had observed on safe doors and hinges in his past investigations.

At this time, he placed defendant under arrest. Defendant acknowledged that someone was with him in the house so Duty and defendant went into the home. They were admitted by Marguerite S., a woman who lived therein. She told Detective Duty that defendant had requested permission to move something into her basement and that she had granted the request. She consented to a search and the officers thereupon went down into the basement and found a safe inside the outside entrance of the basement. The safe was lying on a handcart and the dial and hinge pins had been removed. Various handtools were on the floor surrounding the safe. While Detective Duty was in the process of arresting defendant, the co-defendant was apprehended by other officers while attempting to flee from the basement.

Detective Duty, prior to impounding the car, looked in the window of defendant's automobile. At that time Detective Duty observed some handtools in the car. A search of the vehicle showed that some of the tools matched those found alongside the safe in the basement of the home. Thereafter, following his arrival at the city jail, a nurse at the city jail hospital removed the silvery gray substance on defendant's hands for analysis.

The safe was also taken to the police station and representatives of Northwest Safe Company were called in to open it. An attempt to open the safe failed on November 10th, but the next day a company representative using a carborundum blade cut a hole in the back of the safe. The contents of the safe showed that it was owned by Buddy's Post Tavern in Portland, Oregon. The contents included a money bag containing some money, checks, and papers. It was later confirmed that the safe in Buddy's Post Tavern had been stolen sometime after closing at 2 a.m. on November 10, 1967.

Defendant then was charged with unlawfully, willfully and feloniously concealing, withholding and aiding in the concealing and withholding of certain personal property (*i.e.* the safe) belonging to Buddy's Post Tavern. On these charges, defendant was tried and convicted.

Defendant's first four assignments of error relate to the trial court's determination at a CrR 101.20W hearing that defendant's oral statements were voluntary and therefore admissible against him at his trial.

At the time of defendant's arrest on suspicion of burglary, Detective Duty testified that he began to advise defendant of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). Before he could complete the recitation of constitutional rights to him, defendant interrupted Detective Duty and told him that he was aware of his constitutional rights. At this point, defendant had already been advised of all his rights by Duty except that an attorney would be furnished for him if he could not afford one.

Following the booking process at the city jail, Detective Duty again advised defendant of all his constitutional rights. This conversation lasted about 2 or 3 minutes and was ended when defendant stated he wanted to call an attorney. Defendant at this time was given the use of a telephone and attempted to reach an attorney. He was unable to make contact with an attorney and speak to him at that point.

Detective Duty did not further talk to defendant until November 12, 1967, when he and Detective Anchors met with him in the interrogation room at the jail. Prior to any questioning, Duty testified that he advised defendant of his constitutional rights once again. During this conversation, he found out that defendant had not been able to contact an attorney and he advised him that he could use the telephone for this purpose at any time if he so chose. After giving the defendant the required constitutional warnings, he asked defendant about the incident involving the safe. Defendant admitted that he had paid two men $500 to kidnap the safe for him as he was interested in studying it. He told the officers that he had occasion to see the safe in the tavern as he had gone to Portland on November 8th. This interview lasted about 30 to 45 minutes and defendant repeated all the admissions he made to the two officers in front of the co-defendant, who was brought into the inter-

rogation room midway through the questioning. Detective Duty testified that during the interview defendant talked of getting an attorney, but at no time did he ask for an attorney to be present during the interview.

Defendant and the co-defendant did not take the stand and testify during the CrR 101.20W hearing. Further, there was no evidence that the admissions made by defendant were induced by coercion, either physical or psychological.

Pursuant to CrR 101.20W (c), the trial court entered the following findings of the court:

### I

That at the time of his arrest on November 10, 1967, Detective Joseph Duty of the Seattle Police Department advised defendant Robert W. Sarber of some of his *Miranda* rights, but that the defendant interrupted the admonitions by stating that he knew his rights;

### II

That any statements made by defendant Sarber on November 12, 1967 were made after he was again advised of his *Miranda* rights; that defendant Sarber freely and voluntarily chose to waive his constitutional rights and talk to Detective Duty; that defendant Sarber spoke to Detective Duty concerning an attorney only in connection with his later trial, and indicated no desire to have an attorney present at that time and place;

### III

That on November 12, 1967 . . . defendant Sarber did talk with Detective Duty; that any and all statements made by the defendant to the officer were voluntarily made, without duress, promise or threat; . . .

In accordance with *State v. Hoffman,* 64 Wn.2d 445, 392 P.2d 237 (1964), we have examined the record and find the findings of the court to be supported by substantial evidence. There is no conflicting testimony presented at the CrR 101.20W hearing since defendant did not testify on his behalf in the pretrial hearing. Further, there is no showing that defendant did not understand his constitutional rights. In fact, there is substantial evidence to the contrary in the record before us. Three times, defendant was warned of the rights guaranteed him under the constitution and, despite

these warnings, defendant proceeded to voluntarily give inculpatory statements to Detective Duty. In light of the record, we, therefore, consider defendant's first four assignments of error to be without merit.

In addition to the CrR 101.20W hearing, the trial court also conducted a pretrial hearing to consider defendant's motion to suppress certain evidence seized from defendant's automobile and hands shortly after his apprehension by the arresting officers. After hearing all the testimony, including that of defendant, the trial court entered the following finding of fact:

## I

That there was probable cause to arrest the defendant Robert W. Sarber on November 10, 1967 at 4110 Linden North for suspicion of burglary; that any evidence seized from the defendant in this case was pursuant to the lawful arrest of Robert W. Sarber by Detective Joseph Duty.

In essence, it is defendant's contention that the finding of the trial court is not supported by evidence which establishes probable cause for defendant's arrest by Detective Duty. Further, defendant submits that in the absence of probable cause, there could be no lawful arrest and no lawful search and seizure of his automobile. The evidence seized from the vehicle consisted of some tools found in the back seat after Detective Duty had observed them through the window.

We think the evidence indicates that Detective Duty did have sufficient probable cause to make a lawful arrest of the defendant. At the time of defendant's arrest by Detective Duty on November 10, 1967, Duty was aware of the following: that a reliable informant had notified Detective McKenna that two male occupants in an automobile in front of 4110 Linden Avenue were acting in a suspicious manner; that a second telephone call had been made by the informant to McKenna in which he informed him that the vehicle had been moved in back of the home and that the back seat, a large rope and what appeared to be a small safe were removed from the car; that the safe had been

carried into the basement of the home; and that when Duty arrived at the address he saw defendant at the car and recognized him from previous safe burglary investigations in which he had had cause to arrest him, but was unable to find him. The address on Linden Avenue was also known by the police as a congregating place for known criminal elements. At the time Detective Duty received a call from the officer in charge of the burglary and larceny division of the Seattle Police Department he was investigating a safe burglary at the Fort Lawton pharmacy and he assumed that the safe referred to by the informant was the one stolen there.

In addition to the foregoing, after the arrest of defendant and prior to the time he searched defendant's car, Detective Duty had lawfully entered the home with the permission of the person residing therein. His investigation of the basement of the home revealed a safe on a handcart lying just in front of the outside basement door. The dial and hinge pins of the safe had been removed. On the floor beside the safe there were a number of tools, which the subsequent search of defendant's car showed matched those found in the vehicle.

In *State v. Baxter,* 68 Wn.2d 416, 413 P.2d 638 (1966), we stated at 419-20:

> In cases other than misdemeanors, an arrest can be made without a warrant only when the officer has reasonable grounds to believe that the suspect has committed, is committing, or is about to commit, a felony. *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965); *State v. Mason,* 41 Wn.2d 746, 252 P.2d 298 (1953). If these reasonable grounds exist, the arrest is said to be upon "probable cause," and is lawful. *State v. Darst, supra.* The arrest being lawful, evidence found from a search incident thereto remains untainted.

*See also State v. Poe,* 74 Wn.2d 425, 445 P.2d 196 (1968); *State v. Wright,* 74 Wn.2d 355, 444 P.2d 676 (1968); *State v. Bellows,* 72 Wn.2d 264, 432 P.2d 654 (1967).

Clearly, from our review of the testimony, Detective Duty had reasonable grounds to conclude that defendant

had committed a felony or was committing one. Under the circumstances of this case, the arrest was therefore lawful.

The constitutional standard for searches and seizures without a warrant requires that the search must be substantially contemporaneous with, and incident to, the lawful arrest, and under all the circumstances of the case must be a reasonable one. *State v. Wilson,* 70 Wn.2d 638, 424 P.2d 650 (1967), and cases cited therein at 641. Here, the search of defendant's automobile followed his arrest and search of the basement of the home. Immediately following the search of the basement, the officer went outside and looked in the car window and saw the tools in a bag therein. He then searched the car and seized the tools. We feel that this search was substantially contemporaneous with, and incidental to, the arrest. *See State v. Schwartzenberger,* 70 Wn.2d 103, 422 P.2d 323 (1966); *State v. Wilson, supra.*

■ Secondly, defendant contends that the taking of the silvery gray substance from his hands by a nurse at the city jail hospital violated his right not to give evidence against himself. In view of the testimony relating to the identification of the substance, which was inconclusive regarding the chemical content, its admission cannot be held to be prejudicial error. In any event, we consider this assignment to be without merit. The arresting officer had the duty of preserving the evidence for trial and the course of action followed by him in this case was reasonable and allowable under the existing circumstances.

Lastly, defendant contends that the trial court commented on the evidence in violation of Const. art. 4, § 16. The alleged comment arose during the trial when the state moved to return the money found in the safe to the owner of Buddy's Post Tavern. The owner had finished testifying as to the contents of the safe and was about to return to Portland. Our review of the circumstances surrounding the alleged comment shows that defendant's counsel did not move to discuss the matter outside the presence of the jury. In fact, defendant's counsel initiated any reference to the ownership of the money by referring to it as *her* money (*i.e.* owner of tavern). Prior to that time, the colloquy

involved a matter which was not identified to the jury in the discussion, but was known only to the state, the defendant's counsel and the trial court. Under the circumstances, defendant cannot now complain that the trial court's subsequent comment, which in our view was not prejudicial, was a comment on the evidence. We consider defendant's assignment to be without merit.

Counsel for defendant on this appeal is not the counsel who tried the cause in the trial court.

For the reasons stated in this opinion, the judgment and sentence of the trial court must be affirmed.

HUNTER, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.