[No. 82-40976-1.　Division One.　December 1, 1969.]
Panel 1

THE STATE OF WASHINGTON, *Petitioner*, v. FRANK JAY ISHAM, *Respondent.*

416

*Charles O. Carroll, Prosecuting Attorney,* and *Barbara M. Durham, Deputy,* for petitioner.

*Murray B. Guterson* and *Robert C. Royce,* for respondent.

JAMES, C. J.—■ Defendant Isham was arrested without warrant and charged with the crime of unlawfully performing an abortion. By writ of certiorari, the state challenges part of the trial court's order granting Isham's motion to suppress evidence. Defendant moved to dismiss the writ on the ground that the state failed to file a certified copy of a statement of facts or a complete transcript. The state did file a certified copy of the affidavit of the arresting officer. It contains everything essential to this review. CAROA 57(g)(4). The motion to dismiss is denied.

The case presents the troublesome problem of applying the "probable cause" rule to the circumstances of the warrantless arrest. Did the arresting officer have probable cause to believe that Isham had performed an abortion shortly before the arrest? To answer the question, we must review the facts that were known to the officer at the time of the arrest. *State v. Smith,* 56 Wn.2d 368, 353 P.2d 155 (1960). Because all of the evidence critical to the trial court's ruling is supplied in the affidavit of the arresting officer, the hearing before us is essentially a de novo review.

Defendant justifiably asserts that the state has, in its brief, included within its statement of the case recitations not supported by the record. We summarize without embellishment the arresting officer's affidavit.

The Seattle police received numerous complaints which, to them, suggested the activities of an abortionist. The police established a surveillance over the suspect in the neighborhood of the apartment house in which he resided. On the morning of September 24, 1968, the arresting officer saw the suspect meet an unidentified woman at a parking

lot near the apartment. The suspect and the woman entered the building together and reappeared approximately 2 hours later. In the afternoon of the same day, the officer again witnessed a similar episode—a different woman, but the same suspect, the same parking lot, the same apartment house, approximately the same elapsed time. Upon the basis of these observations, the officer tentatively identified the man as Frank J. Isham, an abortion suspect. A subsequent check of files at police headquarters afforded the officer verification of his tentative identification. He found pictures of the man in the file which, in his opinion, positively identified the man as Frank J. Isham, an abortion suspect.

The surveillance program was continued, and on one occasion prior to October 11, an episode similar to those of September 24 was observed.

On October 11 at 10:50 a.m., Isham was seen meeting a young woman who had driven her car to the same parking lot near Isham's apartment. After Isham and the woman had entered the apartment building, the officer, using the car license number, obtained the name of the woman registered as the owner of the car. At 11:45 a.m. the officer observed Isham and the young woman leaving the rear of the apartment building. He then drove his car from where he had parked across the alley from the apartment house and intercepted Isham and the young woman at a distance of 50 to 75 feet from the apartment. The officer identified himself, addressed both Isham and the young woman by name, and asked them to be seated in his car. They acquiesced, and the officer backed his car into the alley and parked it at the rear of the apartment building. He told the young woman that he had reasonable cause to believe that Isham had performed an abortion upon her contrary to law. He advised her of her constitutional rights and requested her to assist him in obtaining evidence of the suspected crime. The young woman admitted that an abortion had indeed been performed upon her and agreed to direct the officer to the apartment used by Isham.

Both the state and Isham agree that an "arrest" of both Isham and the young woman occurred at the moment the officer "requested" them to enter his police car.

■ A law officer may lawfully arrest without a warrant if he has probable cause to believe that the person he arrests has committed a felony. *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1967). As a dog worries a bone, courts in countless cases have semanticized the words "probable cause." A consensus description of the nature of the problem is fairly stated in 5 Am. Jur. 2d *Arrest* § 48 (1962):

> The existence of "probable cause," justifying an arrest without a warrant, is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved.

The most significant circumstance here involved was the unusual, pattern conduct of the defendant. It had aroused suspicion to the extent that numerous complaints had been made to the police department. The established and observed pattern of meeting different women at a parking lot, walking to the apartment house with them, staying approximately 2 hours, and then walking back to the parking lot was sufficiently suspicious reasonably to prompt further investigation by an alert police officer. The positive identification of the defendant as one described in police files as an abortion suspect, together with the observation of conduct entirely consistent with that identification, would persuade a cautious but disinterested person that defendant was probably performing abortions.

> In determining whether an officer has probable cause to arrest without a warrant, we are governed by the following rules. An officer need not have knowledge of evidence sufficient to establish guilt beyond a reasonable doubt, but only reasonable grounds for suspicion coupled with evidence of circumstances to convince a cautious or disinterested person that the accused is guilty. [Citations]

*State v. Bellows,* 72 Wn.2d 264, 266, 432 P.2d 654 (1967).

We conclude that the officer acted reasonably and that the warrantless arrest of defendant was lawful because based upon probable cause. In reaching this conclusion, we reaffirm the principles stated in *Brinegar v. United States,* 338 U.S. 160, 176, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949):

> These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

Although the trial court's order expressly suppressed

> (a) any testimony of [the young woman], (b) any statements, admissions or confessions of the said Frank Jay Isham, (c) any and all items and property obtained by members of the Seattle Police Department as a result of a search of either the person of Frank Jay Isham or [his apartment], . . .

the state has assigned error only to that portion of the order suppressing the testimony of the young woman.

> No alleged error of the superior court will be considered, unless the same be definitely pointed out in the "assignments of error" in appellant's brief.

CAROA 43. Therefore, only insofar as it suppresses the young woman's testimony, the trial court's order granting Isham's motion to suppress is reversed.

FARRIS and SWANSON, JJ., concur.

Petitions for rehearing denied January 14, 1970, and January 16, 1970.