[No. 456-2.    Division Two.    May 23, 1972.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN DOE, *Appellant.*

*William C. Klein,* for appellant (appointed counsel for appeal).

*C. Brent Nevin, Prosecuting Attorney,* and *Frederick J. Stoker, Deputy,* for respondent.

PETRIE, C.J.—Defendant, James Robert McEwen, appeals his conviction for the unlawful sale of a dangerous drug. The sale took place on September 4, 1970, on the grounds of the Sky River Rock Festival, held at a site north of the Clark County town of Washougal. Defendant was arrested 2 days later, when the rented van in which he was riding left the rock festival grounds. The van was followed by law enforcement officers who converged upon it when it stopped at a gas station in Washougal.

The various law enforcement agencies concerned over the expected traffic in illicit drugs at the rock festival had determined that the anticipated size of the crowd and the conditioning atmosphere of the rock festival would preclude effective on-site drug arrests. They coordinated their efforts instead toward identifying drug sellers, in order to facilitate their arrest outside the festival grounds. Special employees of the drug control assistance unit of the Washington State Patrol, working as a team, were sent onto the grounds for the purpose of making controlled buys of drugs, and thereby identifying the sellers. One member of the team was to make the buy while the other members

served to witness the transaction. Upon making a drug purchase, the team was to proceed to the police command post, located outside the festival grounds. There, the newly purchased drugs were given to an officer, who labeled and sealed them in containers for preservation as evidence. Further information regarding the description of the buy, its geographical location within the festival grounds, the description of any vehicle involved, and the description of the seller was also relayed to the command post. The location of each sale was marked on a map of the festival grounds. In addition, a "hot sheet" listing the description of all vehicles wanted in connection with the unlawful sale of dangerous drugs within the festival site was prepared by the command post and distributed to law enforcement agencies throughout the state.

The information upon which this defendant was arrested was obtained through the efforts of such an undercover team composed of three men. One member of the team made a purchase of a gram of hashish, after having been approached by an individual offering to sell one of them some "hash." The individual was observed working from a rental van from which kites, brass pipes, candles and incense were being sold. The hashish was turned over to the command post, along with a description that the seller was a white male, approximately 20 years of age, 5 feet 9 inches tall, 140 pounds, with shoulder length brown-blondish hair. The vehicle with which the seller was observed to have been associated was described as an orange and white U-Haul Ford Econoline, bearing Washington license U-87547. Subsequently, a John Doe warrant was issued for the arrest of the driver of that particularly-described U-Haul van.

The officer in charge of coordinating the efforts of the various law enforcement agencies involved in policing the Sky River Rock Festival, Clark County Deputy Sheriff Victor Calzaretta, knew the description of the wanted vehicle and of the individual being sought on the felony charge. When a patrol car following the wanted vehicle radioed

that the van had pulled into a gas station, Officer Calzaretta was only a few moments away. There were four individuals outside of the vehicle when he arrived, one of whom was the defendant. Officer Calzaretta, believing defendant fit the description of the individual sought in connection with the unlawful sale of a dangerous drug made from that vehicle, arrested him.

At the pretrial hearing, the court determined that Officer Calzaretta had probable cause to arrest defendant without a warrant. Although defendant places much emphasis upon his argument that the warrant was invalid, thereby vitiating his arrest, it is well settled that an invalid warrant does not negate the validity of an arrest which is supported by probable cause. *Chrisman v. Field,* 448 F.2d 175 (9th Cir. 1971). An arrest for a felony in the absence of a warrant is lawful if the officer had probable cause for the arrest. *State v. Isham,* 1 Wn. App. 415, 461 P.2d 569 (1969).

Officer Calzaretta was in possession of reliable information that a suspect meeting defendant's physical description was wanted on a felony charge. He knew, too, that the description of the vehicle involved in the crime matched exactly that of the U-Haul van in which defendant had been riding. There is no question that the officer had probable cause to arrest defendant without a warrant. Subsequent disclosures that defendant was 18 years of age, rather than 20, as contained in the description, and that when weighed at his trial 1 month after his arrest he was only 106 pounds fully clothed, rather than 140 pounds, do not, in our opinion, detract from the arresting officer's possession of the requisite probable cause to make the arrest. Exact identity is not required. Probable cause is viewed in light of the practical considerations attendant the circumstances of the arrest. *State v. Berkins,* 2 Wn. App. 910, 471 P.2d 131 (1970). Defendant's physical characteristics were reasonably similar to those descriptive of the individual sought. That, coupled with the fact that defendant was a passenger in the specific vehicle identified in connection with the crime, was sufficient to lead a reasonable man

sensibly to the conclusion that defendant probably had committed a felony.

Defendant contends, however, that the jury, and not the court, should pass upon the legality of his arrest. The trial court refused defendant's proposed instruction to the jury on the issue of whether there was probable cause for his arrest. Defendant claims the refusal was error, contending that the issue of probable cause for an arrest is a question for the jury's determination. We cannot agree.

■ The validity of an arrest is a constitutional issue to be resolved solely within the province of the court.

> When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would "warrant a man of reasonable caution in the belief" that an offense has been committed.

*Beck v. Ohio,* 379 U.S. 89, 96, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964). Although the issue has never been specifically met in this jurisdiction, it is clear our courts adhere to the rule that the determination of whether or not there was probable cause to make an arrest without a warrant is a factual question for the court. *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965). *See State v. Todd,* 78 Wn.2d 362, 474 P.2d 542 (1970); *State v. Sarber,* 76 Wn.2d 239, 456 P.2d 312 (1969); *State v. Poe,* 74 Wn.2d 425, 445 P.2d 196 (1968); *State v. Isham, supra.* On a substantially similar issue—the lawfulness of a search and seizure, often dependent on the existence of probable cause for an arrest—the factual issue turning on a determination of reasonableness must be decided by the court. *State v. Montague,* 73 Wn.2d 381, 438 P.2d 571 (1968). Probable cause for an arrest and the legality of a search and seizure involve basic constitutional issues. The duty and obligation of protecting an accused's basic constitutional rights rests with the court, not with a jury. On appeal, it is our function to make an independent review of the evidence to insure that the constitutional safeguards of due process have been afforded the defendant. *State v. Ramsey,* 5 Wn. App. 361, 486 P.2d 1109 (1971).

We find no merit in defendant's remaining contentions. There is no support in the record for defendant's contention that he was prejudicially required to sit at counsel table during the preliminary hearing and during the trial on the day following. There is no indication that the in-court identification of defendant as the seller of the dangerous drug was in any way suggestive. Defendant was required to *attend* the preliminary hearing, but no objection was made to where he happened to sit. Neither was objection made to seating arrangements at the trial. Defendant's claim that he was denied the right to sit among a group of other young men in the spectator area of the courtroom in order that any identification could be made without the suggestion that he was the defendant is unsubstantiated.

■ Neither can we agree with defendant's contention that the state's three eyewitnesses to the sale were subjected to a pretrial photo-identification procedure which was impermissibly suggestive. Defendant asserts that these witnesses were shown a *single* photo of defendant, either on the day of the trial or a day or two prior to the trial. The record does not support that assertion. It is true that all three members of the undercover team testified to having viewed a police identification photograph of the defendant—taken shortly after his arrest—within a few days of the trial. There is no legitimate inference from the record, however, that they were shown only a photograph of the defendant. Witness Stuart testified "I have seen pictures." Witness Thompson was asked on direct examination:

Q   Mr. Thompson, showing you what has been marked by the clerk as Plaintiff's Exhibit No. 2, would you look at that, tell us whether you can identify that?
A   Yes, sir, this is the seller of the drugs from the incident that we have been discussing.

On cross-examination, the extent of the inquiry into the photo-identification was as follows:

Q   Have you ever been shown any pictures of him?
A   I was shown a file of pictures today, and I picked his picture out.

It is apparent that at the time of trial, the defendant no longer wore his hair at shoulder length. The police identification photograph of the defendant (exhibit 2) was introduced without objection as evidence of the contrast in his appearance between the time of his arrest and the time of trial. Considering the record as a whole, we cannot conclude that the circumstances of the pretrial viewing of defendant's photograph were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *State v. Lane,* 4 Wn. App. 745, 484 P.2d 432 (1971).

■ We find no error in the trial court's exclusion of evidence relating to the length of defendant's incarceration in jail after his arrest and the amount at which his bail was set. Such evidence was properly excluded as neither relevant nor material to the issue of guilt. *State v. Ranicke,* 3 Wn. App. 892, 479 P.2d 135 (1970).

■ Defendant objects further to the failure of the state to charge him by grand jury indictment. We adhere to our previous ruling that a defendant may be charged by information only. *State v. Jones,* 2 Wn. App. 627, 472 P.2d 402 (1970).

■ Finally, defendant contends that the failure to record the appointment of the deputy prosecuting attorney representing the state in this prosecution, as required by RCW 36.27.040, is grounds to vacate the conviction. We cannot agree, for the reasons stated upon similar facts in *State v. Gibson,* 79 Wn.2d 856, 860, 490 P.2d 874 (1971):

> Appellant did not object at the time of trial. On appeal, he has claimed no prejudice. We have been given no valid reason to set the verdict aside and we are aware of none.

Judgment is affirmed.

PEARSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied July 10, 1972.

Review denied by Supreme Court September 20, 1972.