[No. 33384. Department One. April 21, 1966.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE VAN BAXTER, *Appellant.*\*

*Reported in 413 P.2d 638.

*James V. Grubb,* for appellant.

*Charles O. Carroll* and *Kenneth O. Eikenberry,* for respondent.

BARNETT, J.†—Appellant was convicted of the crime of burglary in the second degree. He has appealed, urging as error the trial court's denial of his motion to suppress certain evidence; in denying the motion to dismiss on the grounds of failure of proof; and in denying a motion for a new trial.

Each assignment of error is directed to the legality of ap-

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

pellant's arrest and turns on the circumstances under which the officers acted.

At about 3:45 a.m., October 15, 1954, Officer Arthur W. Conley of the Seattle Police Department had reached the end of his assigned tour of duty "working a prowler car." His relief, Officer Harold J. Hartzell, was driving Conley home in the prowler car. This vehicle was marked and identifiable as a police car. They were about one block from Officer Conley's home, and in an area with only a few business houses, when they observed appellant walking through a Safeway Store parking lot. The streets were lighted with vapor lights. Appellant was wearing a coat and hat. He was carrying what appeared to be two hats and another object. It appeared to the officers in the car that appellant had come from behind or out of the adjacent stores.

Having driven past the parking lot, the officers stopped the police car and began backing toward the appellant, who had by now crossed the street behind them. As the police car continued backing, appellant dropped the objects he was carrying and began running. Officer Conley jumped from the passenger's side of the car and voiced a stop-or-I'll-shoot warning to the fleeing appellant. Paying no heed, appellant ran between some houses, with Officer Conley in pursuit. Conley fired no shots. Officer Hartzell, who had brought the police car to a stop, got out, and gave chase in an alternate route so as to intercept appellant. Officer Hartzell fired several shots into the ground, although he could not see appellant.

After a chase of one or two blocks, Officer Conley caught up with appellant behind a house and held him at arm's length, with his pistol drawn, until Officer Hartzell arrived. The two officers then handcuffed appellant and searched his person, finding, among other things, five Ronson cigarette lighters, two Papermate ballpoint pens and a lady's wristwatch. When questioned as to what place he had broken into to get these articles, appellant replied, "Well, I guess you caught me this time."

The two officers and appellant then started back to the police car and, on the way, at the point where they had observed appellant drop several articles, they found two men's hats and a sledge hammer with a sawed-off handle. They got into the police car and drove to the near-by group of mercantile establishments, where they discovered that Henderson's Holly Park Drugs had been broken into through the back door, ransacked, and the safe pounded off its concrete base and broken open. Appellant's auto was found parked some distance from the burglarized drug store. After again returning to the burglarized drug store, appellant was taken to the police station where he was booked.

The trial commenced without a motion having been made for the suppression of any of the items found on appellant's person at the time of his arrest. During the presentation of the state's case, Officer Conley related his version of the arrest and search as heretofore described. The alleged purloined items were then offered and received into evidence, appellant voicing no objection. At the time these exhibits were admitted, all of the facts and circumstances surrounding the arrest were known by appellant.

After questioning five more witnesses, the state rested its case. It was at this moment that appellant moved to have the admitted evidence suppressed, and for a directed verdict, on the grounds that the search and seizure were illegal and in violation of his constitutional rights. The motions were denied, which denial is the basis for this appeal.

Appellant's case is predicated upon the argument that the state's testimony obviously disclosed that the items taken from his person were seized as the result of an unlawful arrest. It is his contention that the officers placed appellant under arrest without having reasonable grounds for believing that he had committed a felony; that the arrest was therefore made without probable cause; and that the evidence seized as an incident to that arrest should have been suppressed.

■ In cases other than misdemeanors, an arrest can be made without a warrant only when the officer has reasonable grounds to believe that the suspect has committed, is

committing, or is about to commit, a felony. *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965); *State v. Mason,* 41 Wn.2d 746, 252 P.2d 298 (1953). If these reasonable grounds exist, the arrest is said to be upon "probable cause," and is lawful. *State v. Darst, supra.* The arrest being lawful, evidence found from a search incident thereto remains untainted. In *Darst, supra,* we declared, at 812:

> The probable cause essential to support an arrest without a warrant is a belief based upon facts within the knowledge of the arresting officer, persuasive enough to convince a judge that a cautious but disinterested man would also believe the arrested person guilty.

■ A case of arrest without a warrant necessitates striking a balance between considerations respecting rights of individuals and considerations respecting the responsibility of police officers for the safety and security of all members of the community. The test is one of reasonableness considering the *time,* the *place,* and the *pertinent circumstances. Plancich v. Williamson,* 57 Wn.2d 367, 357 P.2d 693 (1960). The standard of probable cause should be given a nontechnical application, *i.e.,* it is to be applied in the light of everyday experience, rather than according to strict legal formulae. See Davis, Federal Searches and Seizures, at 271 (1964).

In *Brinegar v. United States,* 338 U.S. 160, 93 L. Ed. 1879, 69 Sup. Ct. 1302 (1949), it is stated:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . .
>
> . . . .
>
> The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests.

In the instant case, it appears from the record that the arresting officers had sufficient cause to believe that a felony had been committed by the appellant. When they first saw appellant, the hour was approximately 4 a.m.; he appeared to have come from behind or out of some

business houses in an area containing just a few such businesses. In the words of Officer Conley:

> At the time, we noticed that he was carrying something in his hands, and it appeared to be a couple of hats and something else we couldn't distinguish; so by the time we got abreast of him he was about fifty feet from the street; and we, amongst ourselves, said that we had better stop and see what he was doing, coming from behind or out of the stores here.

The police car was driven past appellant, stopped, and began backing up. Appellant dropped the objects he was carrying and began running away from the police car.

We hold that the facts and circumstances surrounding the arrest would have warranted a belief by a reasonable, cautious observer that the appellant had committed a felony. The unusual hour, appellant's emergence from behind a cluster of business houses, his curious conduct of wearing one hat while carrying two others, and particularly his flight, could not but have such a cumulative impact upon the mind of a cautious but disinterested observer as to cause him to believe that a felony had been committed; and that it was committed by appellant.

The officers violated no rights of appellant in backing their car toward him. There is nothing unreasonable in an officer's questioning persons who are out late at night. *People v. Simon*, 45 Cal. 2d 645, 290 P.2d 531 (1955). Had he continued to walk, or had he remained standing and merely refused to talk, the police may well have lacked probable cause to arrest him. See *Green v. United States*, 259 F.2d 180 (D.C. Cir. 1958), *cert. denied*, 359 U. S. 917, 3 L. Ed. 2d 578, 79 Sup. Ct. 594 (1959). *The arrest and subsequent search were not made until after the flight.* Flight is circumstantial evidence of guilt. *Vaccaro v. United States*, 296 F.2d 500 (5th Cir. 1961), *cert. denied*, 369 U. S. 890, 8 L. Ed. 2d 289, 82 Sup. Ct. 1164 (1962).

From the facts before us we cannot say, as we have been urged, that appellant was motivated to flight not by a consciousness of guilt, but because of a fear of harassment, or the like, at the hands of the police officers. Flight is an

element of probable cause. Innocent people sometimes flee from officers, but not frequently. *Garske v. United States,* 1 F.2d 620 (8th Cir. 1924). In the words of Judge Learned Hand, ". . . it has at no time been doubted that flight is a circumstance from which a court or an officer may infer what everyone in daily life inevitably would infer." *United States v. Heitner,* 149 F.2d 105, 107 (2d Cir. 1945), *cert. denied, Cryne v. United States,* 326 U. S. 727, 90 L. Ed. 432, 66 Sup. Ct. 33 (1945).

In *People v. Martin,* 46 Cal. 2d 106, 293 P.2d 52 (1956), the court held that where two men who were alone in an automobile in "lover's lane" at night fled in that automobile upon seeing city police officers, the officers were justified, upon overtaking the men, in arresting and searching them. The court, speaking through Judge Traynor, said, at 108:

> Although the presence of two men in a parked automobile on a lover's lane at night was itself reasonable cause for police investigation [citing cases], their sudden flight from the officers and the inference that could reasonably be drawn therefrom that they were guilty of some crime [citing case], left no doubt not only as to the reasonableness but as to the necessity for an investigation.

We hold that the search and seizure were incident to a lawful arrest. It was proper for the trial court to deny appellant's motion to suppress.

■ Our decision is not limited to the determination that the arrest was made upon probable cause. Appellant waited until the conclusion of the state's case before he moved to suppress the evidence. We adhere to the rule that, when a defendant wishes to suppress certain evidence, he must, within a reasonable time before the case is called for trial, move for such suppression, and thus give the trial court an opportunity to rule on the disputed question of fact. *State v. Robbins,* 37 Wn.2d 431, 224 P.2d 345 (1950). There is a reason for this rule, and that is to allow the trial, once begun, to proceed in an orderly fashion to its conclusion, without the necessity of stopping it to try collateral issues. On the other hand, where it appears during the trial that

the evidence was illegally obtained, there being no substantial question of fact on this issue, it is the *duty* of the court, *upon objection,* to refuse to admit it. *State v. Robbins, supra.* The same case recognizes the following exception, at 432:

Where, during the trial of the case, the defendant *objects to the reception* of the articles in evidence, on the ground that they were unlawfully seized, and offers to prove such unlawful seizure, and also offers to prove that, by the exercise of reasonable diligence, he could not before have learned that the articles were unlawfully seized, the court should stop in the trial of the case and determine the collateral issue concerning the legality of the seizure. (Italics ours.)

It was appellant's contention in the trial court, as it is here, that by the exercise of reasonable diligence he could not have discovered the unlawful nature of the arrest; and that it was only during the presentation of the state's case that he learned that the evidence was illegally obtained. He further urges that, in any event, it became so clear from the officers' testimony that the items were improperly seized, it was the court's duty to suppress, even though no pretrial motion had been made. We must agree with the state that the motion to suppress was not timely, and for the following reasons. In the first place, it did not appear from the state's testimony that the property was illegally seized. Quite to the contrary, as we have determined.

Secondly, no objection was made at the time the evidence was offered and received. The rules set forth in the *Robbins* case, *supra,* contemplate that a *timely objection* be made to the reception of the evidence.

 The exclusion of improperly obtained evidence is a privilege and can be waived. *State v. Smith,* 50 Wn.2d 408, 314 P.2d 1024 (1957). While it is true that both our state and federal constitutions protect us from unreasonable searches and seizures, it is also true that, in order to preserve these rights, persons claiming benefits thereunder must seasonably object. See *Segurola v. United States,* 275 U. S. 106, 72 L. Ed. 186, 48 Sup. Ct. 77 (1927). In *State v.*

*Lemons,* 53 Wn.2d 138, 331 P.2d 862 (1958), it was held that a motion to suppress, made for the first time after the state's case by an accused who failed to object to the reception of the evidence, was untimely. Again, in *State v. Jackovick,* 56 Wn.2d 915, 355 P.2d 976 (1960), we held that the defendant's failure to object to the reception of the evidence during the trial constituted a *waiver* of his right to move to suppress. Appellant here was fully aware of the circumstances surrounding his arrest by the time the alleged illegally seized items were offered into evidence. He chose to remain silent. His motion to suppress at the end of the state's case came too late.

Judgment affirmed.

ROSELLINI, C. J., DONWORTH, HUNTER, and HALE, JJ., concur.