[No. 24143-5-I.   Division One.   October 1, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. MARC
AARON TARICA, *Appellant.*

*Jesse Barton* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Craig Peterson, Deputy,* for respondent.

SCHOLFIELD, J.—Marc Aaron Tarica appeals his conviction for taking a motor vehicle without permission. We reverse.

## FACTS

On October 10, 1988, Tarica was charged by information with the crime of taking a motor vehicle without permission, contrary to RCW 9A.56.070. The charge arose out of a contact that Tarica had with two Seattle police officers at approximately 3:30 a.m. on September 10, 1988. Officers Holley and Bisson were patrolling in their marked patrol car in the area of First and Pike in downtown Seattle. The officers encountered Tarica in the 1400 block of the alley between First and Second, running parallel to those two

streets. The 1400 block is bounded by Union and Pike Streets.

Tarica was standing in the alley next to a blue Datsun 260–Z. The engine was running and the lights were on. The Datsun was facing northbound in the alley, and the officers were headed southbound in the alley from Pike. As the officers approached, Tarica got inside the Datsun, and backed quickly out onto Union Street. Bisson described Tarica's rate of speed when backing up as being "with a purpose". The officers noticed that the front license plate was absent.

Tarica then drove west on Union toward First Avenue. The officers, believing that Tarica was attempting to elude them, followed his vehicle. By the time the officers reached First and Union, Tarica was one–half to two–thirds of a block away, northbound on First. As he drove up First Avenue, Tarica apparently drove 35 m.p.h. in a 30 m.p.h. zone, and straddled the two northbound lanes. Tarica made a right turn onto Pike Street, and entered into slow–moving traffic.

Between First and Second Avenues on Pike, the officers activated their emergency lights. Tarica continued to proceed eastbound on Pike at a slow rate of speed, and turned southbound on Fifth Avenue. Using the P.A. system, one of the officers instructed Tarica to pull over at that point, which he did.

Tarica got out of the car, and when asked to produce identification, gave the officers a Washington temporary (nonphoto) license in the name of "Craig Borek". According to Holley's testimony, at that point the officers placed Tarica under arrest for "traffic crime", placed him in handcuffs, and put him in the patrol car because they believed Tarica was "trying to elude".

After this was accomplished, the officers searched Tarica's wallet and found picture identification for Craig Borek, who was Tarica's roommate, and the photograph did not match Tarica's appearance. The officers learned

through their computer that the Datsun 260–Z was registered to an Ernie Bacalzo. Inside Tarica's wallet there was a business card belonging to "Ernest Bacalzo, Pacific Growth Securities, Inc."

At trial, the State presented testimony from Bacalzo that he did not know Tarica and had not given him permission to drive the vehicle, and that he had reported the vehicle as stolen on June 29, 1988. The State also presented the testimony of Sandy Wiltfong, who was living in Fife, Washington, at the time of this incident. She stated that the license plate that was on the Datsun 260–Z at the time Tarica was arrested actually belonged on her car, a 1975 Chevrolet Monza.

Tarica testified in his own defense. He stated that he did not steal the Datsun, did not know that it was stolen, and did not know how the license plate got switched. Tarica indicated that he did not know how Bacalzo's business card came to be in his wallet. Tarica acknowledged that during the summer of 1988 he lived in Milton, Washington, a small town near Fife.

Tarica testified that on the night of the arrest, he met a man named "Roberto", and that Roberto had given him a ride downtown in the Datsun. Roberto parked the car and got out to attempt to buy some marijuana, leaving Tarica alone in the car. Tarica saw Roberto motion to him to bring the car over, so he got behind the wheel to do so. It was at that point that the officers followed Tarica and ultimately stopped him. Tarica was impeached with his prior felony convictions.

The defense also presented the testimony of Tarica's former girl friend, Mary Ann Thomas, who stated that in the period of June through August 1988, Tarica was using her car for transportation, and that she never saw him in possession of the Datsun 260–Z.

The jury found Tarica guilty as charged. He was sentenced within the standard range to 8 months in jail. This appeal timely followed.

## MAY SEARCH AND SEIZURE ISSUES BE RAISED
## FOR THE FIRST TIME ON APPEAL?

■ RAP 2.5(a) provides in pertinent part as follows:

**(a) Errors Raised for First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: . . . (3) manifest error affecting a constitutional right.

In *State v. Scott*, 110 Wn.2d 682, 757 P.2d 492 (1988), the Washington Supreme Court analyzed RAP 2.5(a)(3). As the State asserts, the *Scott* court stated that the constitutional error exception to the general rule that appellate courts will not consider issues not raised in the trial court

is not intended to afford criminal defendants a means for obtaining new trials whenever they can "identify a constitutional issue not litigated below."

*Scott*, at 687 (quoting *State v. Valladares*, 31 Wn. App. 63, 76, 639 P.2d 813 (1982), *aff'd in part, rev'd in part*, 99 Wn.2d 663, 664 P.2d 508 (1983)).

The *Scott* court set forth a 2–part test for dealing with claims of constitutional error asserted for the first time on appeal:

First, the appellate court should satisfy itself that the error is truly of constitutional magnitude—that is what is meant by "manifest". If the asserted error is not a constitutional error, the court may refuse review on that ground. If the claim is constitutional, then the court should examine the effect the error had on the defendant's trial according to the harmless error standard set forth in *Chapman v. California*, [386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967)].

(Footnote omitted.) *Scott*, at 688.

There is no question that the search and seizure issue presented is constitutional, and there is a reasonable possibility that a motion to suppress, had it been made, would have been successful. However, there was no *error* in the trial court proceedings below.

■ In *State v. Baxter*, 68 Wn.2d 416, 413 P.2d 638 (1966), the Washington Supreme Court stated that the exclusion of improperly obtained evidence is a privilege that may be waived. Even though the state and federal

constitutions protect individuals from unreasonable searches and seizures, a seasonable objection must be made to preserve the right. *Baxter,* at 423. In *Baxter,* the defendant was well aware of the circumstances surrounding his arrest at the time the alleged items were offered into evidence, such that his motion to suppress at the end of the State's case was too late. *Baxter,* at 424.

In *State v. Valladares,* 31 Wn. App. 63, 639 P.2d 813 (1982), *rev'd in part on other grounds,* 99 Wn.2d 663, 664 P.2d 508 (1983), Valladares made a motion to suppress evidence seized in a warrantless search of his vehicle, but later withdrew the motion. On appeal, he sought to raise the issue, despite having made no objection to admission of the evidence at trial. The Valladares court stated as follows:

> With these principles in mind we believe the propriety of invoking RAP 2.5(a)(3) in this case turns on whether a clear violation of due process resulted from the admission of evidence, without objection, that may have been obtained in violation of defendant's Fourth Amendment rights. It must be remembered that, historically, otherwise competent and relevant evidence, even though illegally or unconstitutionally obtained, is not thereby rendered inadmissible. There is no constitutional per se prohibition against its use, *i.e.,* the use itself violates no constitutional right. True, the exclusionary rule was devised by the courts to afford meaning to such rights. But the defendant must take advantage of the rule and affirmatively seek its protection. [Citation omitted.] By withdrawing his motion to suppress, Valladares simply elected not to take advantage of the mechanism which the State has placed at his disposal for excluding the evidence. Defendant thus waived or abandoned his Fourth Amendment objections.

*Valladares,* at 76.

Applying the *Valladares* reasoning to the circumstances before us, we find that Tarica failed to preserve this issue for appellate review. His failure to move to suppress the evidence obtained from his wallet constituted a waiver of his right to have it excluded as having been obtained in violation of the Fourth Amendment.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ To establish ineffective assistance of counsel, the defendant must first show that his counsel's performance

was deficient. Secondly, the defendant must show that such deficient performance prejudiced the defense. This requires a showing that counsel's errors were so egregious that the defendant was deprived of a fair trial—that the result is unreliable. *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *See also State v. Jeffries,* 105 Wn.2d 398, 717 P.2d 722, *cert. denied,* 479 U.S. 922, 93 L. Ed. 2d 301, 107 S. Ct. 328 (1986).

Courts apply a strong presumption of reasonableness in scrutinizing whether defense counsel's performance was ineffective. *State v. Thomas,* 109 Wn.2d 222, 743 P.2d 816 (1987). If defense counsel's conduct can be characterized as legitimate trial strategy or tactics, ineffective assistance of counsel will not be found. *State v. Mak,* 105 Wn.2d 692, 718 P.2d 407, *cert. denied,* 479 U.S. 995 (1986). A reviewing court is not required to address both prongs of the test if the defendant makes an insufficient showing on one prong. *State v. Fredrick,* 45 Wn. App. 916, 729 P.2d 56 (1986).

■ Tarica argues his counsel was deficient in not bringing a pretrial motion to suppress evidence. We agree. As a normal rule, defense counsel brings such a motion anytime there may be a question as to the validity of a search and subsequent seizure. Because the motion is made pretrial and not in front of the jury, there does not appear to be any way to characterize the failure to bring the motion to suppress as a legitimate trial tactic. Therefore, Tarica's counsel's performance was deficient.

The next question is whether the defense was prejudiced by failure to bring the motion. Analysis of that question requires an examination of whether the motion to suppress would have been granted had it been made. The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . ..

U.S. Const. amend. 4. Similarly, article 1, section 7 of the Washington Constitution provides that:

No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

In the absence of probable cause to arrest, police are entitled to briefly detain and question an individual if they have "a well founded suspicion based on objective facts that he is connected to actual or potential criminal activity." *State v. Sieler*, 95 Wn.2d 43, 46, 621 P.2d 1272 (1980); *see also Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Analysis of an investigatory stop is a 2-step process, asking (1) whether the initial detention was justified, and (2) whether the detention was reasonably related in scope to the reason for the detention. *State v. Ortiz*, 52 Wn. App. 523, 762 P.2d 12 (1988).

Here, the State argues that the initial stop of Tarica was justified because the officers had reason to believe that Tarica had committed the felony of attempting to elude a police vehicle, contrary to RCW 46.61.024. That statute states in pertinent part as follows:

> Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony.

The trial record does not support the State's contention. At most, during the time that Tarica was being pursued by the police vehicle, he exceeded the speed limit by 5 miles per hour, a traffic infraction. In addition, one of the officer's testimony indicates that as Tarica drove up First Avenue, he "straddl[ed] both lanes", which is another traffic infraction. These do not constitute the crime of attempting to elude a pursuing police vehicle. The officers' testimony that they believed that Tarica was trying to elude them is really no more than an "inarticula[ble hunch]", and cannot be used to support a *Terry* stop. *Terry*, at 22. Even if it can be said that Tarica failed to stop, he did not drive recklessly.

In *State v. Larson*, 93 Wn.2d 638, 611 P.2d 771 (1980), police officers observed an automobile parked more than 1 foot from the curb in violation of a city parking ordinance

at 3 o'clock in the morning. The officers knew that several burglaries had recently been committed in the area. They felt that it was unusual for a vehicle to be parked on that side of the street if the occupants intended to visit someone living in the apartments on the other side of the street.

Accordingly, the officers went to question the persons in the car. As the officers approached the car, the driver started the engine and began to pull away, but he stopped when the officers turned on the blue emergency light. While one of the occupants was retrieving her identification from her purse, an officer noticed marijuana contained inside. The occupant was placed under arrest for possession of marijuana. A subsequent search of the purse yielded additional drugs and evidence of forgery. *Larson,* at 639–40.

On appeal, the *Larson* court held that evidence of the parking violation was an insufficient ground to permit questioning of the passenger. *Larson,* at 641–42. The *Larson* court went on to hold that the fact that the car was parked in a high–crime area late at night and that it started to pull away as the officers approached did not give rise to articulable suspicions that the occupants were engaged or had engaged in criminal conduct. At best, the circumstances amounted to merely an "inarticula[ble] hunch". *Larson,* at 643.

In the case before us, while there was insufficient evidence of attempting to elude, the two traffic infractions were sufficient to support the stop itself. However, it appears that the scope of the stop far exceeded the nature of these two infractions. Instead of a brief stop to issue a citation, the stop ripened into a full custodial arrest. *See State v. Solis,* 38 Wn. App. 484, 685 P.2d 672 (1984).

Probable cause to arrest exists:

when an officer has reasonable grounds to believe a suspect has committed or is committing a crime based on circumstances sufficiently strong to warrant that conclusion. The test is one of reasonableness, considering the time, place, and circumstances

and the officer's special expertise in identifying criminal behavior.

*State v. Gonzales,* 46 Wn. App. 388, 395, 731 P.2d 1101 (1986).

Applying this definition to the facts in the record before us, we believe that insufficient probable cause existed to arrest Tarica. The State contends that there was probable cause to arrest Tarica for attempting to elude. As discussed above, an examination of the statute belies that contention.

In addition, the State argues that the officers had probable cause to arrest Tarica for providing false identification to them. However, the facts indicate that Tarica gave the officers a nonphoto temporary driver's license in the name of Craig Borek. It was only after the arrest, when the officers were searching Tarica's wallet, that they discovered photo ID belonging to Borek, from which they could determine that the identification given them was false. Thus, probable cause did not exist to arrest Tarica.

The State argues, alternatively, that the officers felt, based on their experience and based on Tarica's manner in looking around, that he was preparing to flee, so they handcuffed him and placed him in the patrol car. The State cites *State v. Sweet,* 44 Wn. App. 226, 721 P.2d 560, *review denied,* 107 Wn.2d 1001 (1986) in support of its contention that detention of Tarica was reasonable. However, in *Sweet,* the officers first ordered Sweet to halt, and instead he had started to run, and thus had shown a "demonstrated propensity for flight" before he was detained in a similar manner. *Sweet,* at 233.

The officers' testimony in support of the notion that Tarica was trying to flee was that he had driven quite slowly along Pike Street because he was looking for an escape route, they believed. In addition, although one officer acknowledged that Tarica did not try to get out of the car and run after he was stopped, the officer testified that Tarica "look[ed] around as though he was looking to see where there is [*sic*] to run".

■■ This testimony is insufficient to show the "demonstrated propensity for flight" described in *Sweet*. Tarica did not run or attempt to run, and the fact that he behaved nervously is not enough. Thus, in the absence of probable cause to arrest or detain, it would appear that the scope of the initial stop exceeded the standard of reasonableness. The proper remedy under such circumstances is the suppression of any evidence obtained as a result of an improper arrest under the exclusionary rule. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

We emphasize that our analysis of the probable outcome of a suppression hearing is based only on the evidence presented at trial, not on the evidence the State might put forth in response to a motion to suppress. Furthermore, because our review is not based on evidence from a suppression hearing, we are not ruling on the suppression motion, but rather, determining the *likelihood* that such a motion would have been granted.

Given that a motion to suppress probably would have been granted under the facts of this case, Tarica has established the necessary prejudice requirement under the second prong of the ineffective assistance of counsel test. This court cannot say that the trial result would have been the same if the evidence of Bacalzo's business card in Tarica's wallet had been suppressed.

Tarica had an explanation for giving his roommate's identification—his own license was suspended. However, his theory of the case was that he did not know that the vehicle was stolen. The contradictory piece of the State's evidence was the presence of the business card in his wallet. Thus, the motion to suppress was critical to Tarica's case.

The judgment is reversed and this case is remanded for a new trial.

GROSSE, A.C.J., and PEKELIS, J., concur.