[No. 29502-1-I.   Division One.   April 19, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. RASHAWN
THOMPSON, *Appellant.*

*Elizabeth Govaerts* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Kristjan P. Ochs* and *Peter Goldman, Deputies,* for respondent.

SCHOLFIELD, J. — Rashawn Thompson appeals his conviction on one count of second degree criminal trespass, RCW

9A.52.080, and one count of possession of a controlled substance with intent to deliver, RCW 69.50.401(a). We reverse in part.

On March 10, 1991, Seattle Police Officer Melvin Britt was on patrol in the area of the Golden Sands Apartments in south Seattle. Britt had had several talks with the manager of the Golden Sands, Cheryl Belgarde, regarding problems in the area, and the manager had previously called the police to report drug activity around the apartments.[1]

As Britt drove past the Golden Sands, he saw appellant Rashawn Thompson on the apartment grounds. Britt had had two prior contacts with Thompson, who did not live in the apartments or have permission from Belgarde to be on the premises. On March 3, 1991, Britt spotted Thompson and another individual on the apartment grounds, and the two ran from him when he approached. Britt eventually arrested (and released) Thompson and the other individual for "obstructing" and for trespass, and admonished Thompson for criminal trespass.[2] On March 5, 1991, Britt again found Thompson on the apartment grounds, and cited him for criminal trespass. Immediately prior to this contact, Thompson had again attempted to run from Britt. Britt told Thompson that if he was seen one more time at the Golden Sands, he would be going to jail.

As Britt proceeded past the Golden Sands on March 10, he saw Thompson duck behind a bush near the side of the building. Britt drove around the back in an effort to contact Thompson "so he didn't have the opportunity to run." Britt later apprehended Thompson approximately 500 to 600 feet from where he had initially spotted him.

---

[1]Belgarde sought to curtail the trespassing and loitering by placing three or four no trespassing and no loitering signs on the building. These signs were approximately 3 to 4 feet long and 2 to 3 feet wide and were posted in the front and back of the building.

[2]Britt stated that the "obstructing" arrest was based on Thompson's refusal to stop. In admonishing Thompson, Britt filled out a card listing Thompson's name, his home address, his physical description, and the address he was admonished from. Thompson refused to sign the card.

Britt believed he had probable cause to arrest Thompson for criminal trespass based on the two prior incidents. Britt placed Thompson's hands on the hood of the police car, began a pat-down search, and told Thompson he was under arrest. Britt stated that

> Whenever I arrest somebody, I always pat them down, make sure they have no weapons on them and no items of contraband which they would easily dispose of in my patrol car, which could later become an issue of whether it was his or not.

Britt found approximately 2.75 grams of cocaine on Thompson's person.

On May 3, 1991, Thompson was charged (in the juvenile department) with second degree criminal trespass, in violation of RCW 9A.52.080 (count 1), and possession of a controlled substance with intent to deliver, in violation of RCW 69.50.401(a) (count 2). Prior to trial, defense counsel did not move to suppress the cocaine seized from Thompson. Thompson was found guilty as charged on both counts. This appeal followed.

Thompson claims the information charging him with possession of a controlled substance with intent to deliver is defective because it fails to allege knowledge of the nature of the substance.

The information reads as follows, in relevant part:

> That the respondent Rashawn Thompson, in King County, Washington, on or about 10 March 1991, unlawfully and feloniously did have in his possession with intent to manufacture or deliver a certain controlled substance, and a narcotic drug, to wit: cocaine;
> Contrary to RCW 69.50.401(a), and against the peace and dignity of the state of Washington.

The statutory elements of possession of a controlled substance with intent to deliver are (1) unlawful possession (2) with intent to manufacture or deliver (3) a controlled substance, to wit: cocaine. RCW 69.50.401(a); *State v. Sims*, 119 Wn.2d 138, 141, 829 P.2d 1075 (1992). However, the common law element of guilty knowledge is not an element of the offense:

It is impossible for a person to intend to manufacture or deliver a controlled substance without knowing what he or she is doing. By intending to manufacture or deliver a controlled substance, one necessarily knows what controlled substance one possesses as one who acts intentionally acts knowingly. RCW 9A.08.010(1)(a), (2). Without knowledge of the controlled substance, one could not intend to manufacture or deliver that controlled substance. Therefore, *there is no need for an additional mental element of guilty knowledge.*

(Italics ours.) *Sims*, at 142. Under the reasoning of *Sims*, Thompson's argument is without merit.

Thompson next claims his trial counsel was deficient for failing to move to suppress the cocaine seized because there was a legitimate question as to the validity of Britt's search of him. He claims he was prejudiced by counsel's deficient performance because the evidence was illegally seized and would have been suppressed had a motion been made. The State contends that Thompson received effective assistance, even though no motion was made to suppress the cocaine seized, because a suppression motion would not have been meritorious.

■ To prevail on a claim of ineffective assistance of counsel, the defendant must show both ineffective representation and resulting prejudice. *In re Rice*, 118 Wn.2d 876, 888, 828 P.2d 1086, *cert. denied*, ___ U.S. ___, 121 L. Ed. 2d 344, 113 S. Ct. 421 (1992). The first element is met by showing that counsel's conduct fell below an objective standard of reasonableness. The second element asks whether there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Rice*, at 889. A reviewing court is not required to address both prongs of the test if the defendant makes an insufficient showing on one prong. *State v. Tarica*, 59 Wn. App. 368, 374, 798 P.2d 296 (1990).

Courts apply a strong presumption of reasonableness in scrutinizing whether defense counsel's performance was ineffective. *Tarica*, at 374. If defense counsel's conduct can be characterized as legitimate trial strategy or tactics, ineffective assistance of counsel will not be found. *Tarica*, at 374.

■ The decision of whether to bring a pretrial motion to suppress evidence is not considered a "trial tactic":

> As a normal rule, defense counsel brings such a motion anytime there may be a question as to the validity of a search and subsequent seizure. Because the motion is made pretrial and not in front of the jury, there does not appear to be any way to characterize the failure to bring the motion to suppress as a legitimate trial tactic.

*Tarica*, at 374. In this case, defense counsel did not move to suppress the evidence seized from Thompson. Before addressing whether the failure to move to suppress rendered counsel's performance deficient, we address whether Thompson was prejudiced due to counsel's failure to do so. This requires an examination of whether the motion to suppress would have been granted had it been made. *Tarica*, at 374.

■■ A reasonable search of an arrestee's person is justified by the fact of his lawful arrest. *State v. Mennegar*, 114 Wn.2d 304, 314, 787 P.2d 1347 (1990); *State v. McIntosh*, 42 Wn. App. 573, 578, 712 P.2d 319, *review denied*, 105 Wn.2d 1015 (1986). A search incident to a lawful custodial arrest is based on the need to disarm and discover evidence, and "does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *McIntosh*, at 578 (quoting *United States v. Robinson*, 414 U.S. 218, 235, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973)).

The validity of Britt's search of Thompson thus turns on whether the arrest was lawful. An arrest for a misdemeanor without a warrant may only be made if the arresting officer has probable cause to believe the offense is being committed in his presence. *Seattle v. Cadigan*, 55 Wn. App. 30, 36, 776 P.2d 727, *review denied*, 113 Wn.2d 1025 (1989). Probable cause exists where " 'there is reasonable ground for suspicion, supported by circumstances within the knowledge of the arresting officer, which would warrant a cautious person's belief that the individual is guilty of a crime.' " *State v. Blair*, 65 Wn. App. 64, 69, 827 P.2d 356 (1992) (quoting *State*

*v. Green*, 91 Wn.2d 431, 436, 588 P.2d 1370 (1979), *adhered to in part, rev'd in part on reconsideration*, 94 Wn.2d 216, 616 P.2d 628 (1980)).

A person is guilty of criminal trespass in the second degree if "he knowingly enters or remains unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree." RCW 9A.52.080(1). Thompson was arrested on March 10, 1991, after Britt observed him on the premises of the Golden Sands Apartments. Thompson did not live at the Golden Sands nor did he have permission from the apartment manager to be there. The premises were posted with "no trespassing" signs. Prior to March 10, 1991, Britt had twice admonished Thompson regarding his presence on the property. During these prior incidents, Thompson had run from Britt when he approached. Britt had warned Thompson that if he was seen on the property again, he would be arrested. When Britt spotted Thompson on the apartment grounds on March 10, Thompson ducked behind a bush near the side of the building. Britt later arrested and searched Thompson approximately 500 to 600 feet from where he had initially spotted him. Based on these facts, we conclude that Officer Britt had probable cause to believe that Thompson had committed the crime of second degree criminal trespass on March 10, 1991.

This case shares certain similarities with *State v. Blair*, *supra*, a case relied on by Thompson. In *Blair*, the court held that an officer's statement to Blair warning him not to return to Roxbury Village (a public housing complex) did not, in itself, create probable cause to arrest Blair for criminal trespass on a later date when he was observed entering the premises. *See Blair*, at 66, 70. The officer's warning to Blair had occurred during a prior arrest on an unrelated charge, and was apparently given because the officer had seen Blair on the Roxbury Village property in the past. *Blair*, at 66. After the warning was issued, the officer observed Blair walking with a friend into the Roxbury Village property. *Blair*, at 66. Despite Blair's protestations that he was not doing anything and was just going to get his hair braided,

the officer placed Blair under arrest and searched him. *Blair*, at 66.

The officer made no attempt to find out whether Blair was on the premises for a legitimate purpose. *Blair*, at 66. The court held that while the officer could have stopped Blair, asked him what he was doing on the premises, and investigated to see if his purposes were legitimate, he had no probable cause to arrest him based solely on the prior admonishment not to return. *Blair*, at 70.

The arrest in this case, however, was based on more than a single prior admonishment. Prior to his arrest on March 10, 1991, Thompson had been twice contacted by Officer Britt and admonished or warned regarding the premises, yet there is no evidence that he ever attempted to provide any legitimate explanation for his presence on the property.[3] Indeed, Thompson had attempted to run away from Britt on both prior occasions, which is evidence that his presence on the property was unlawful. *See State v. Friederick*, 34 Wn. App. 537, 542-43, 663 P.2d 122 (1983) (flight is itself circumstantial evidence of guilt and thus an element of probable cause). When Britt spotted Thompson a third time on the premises on March 10 — and observed him duck behind a bush — there was probable cause for him to believe that Thompson was unlawfully on the property. Unlike the facts in *Blair*, there is no indication that Thompson made any effort during his March 10 arrest to explain or justify his presence. *See Blair*, at 66. Under these circumstances, Britt was not obligated to question Thompson regarding his right to be on the property prior to the arrest and search. *Cf. State v. Blair*, 65 Wn. App. at 69-70.

Based on the foregoing, a motion to suppress evidence seized from Thompson incident to his arrest would likely have been unsuccessful, and we therefore do not believe that Thompson was prejudiced by defense counsel's failure to bring such a motion. Although defense counsel could have challenged the validity of the arrest and seizure through a

---

[3]Thompson did not testify at trial.

motion to suppress, she may have reasonably concluded, based on the facts, that such a motion was without merit. Defense counsel's performance was not deficient.

Thompson next claims that the evidence to show that he was unlawfully present on the premises of the Golden Sands Apartments was insufficient to support his conviction for second degree criminal trespass.

The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *Salinas*, at 201. A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Salinas*, at 201.

The evidence presented regarding Thompson's unlawful presence at the Golden Sands Apartments has been previously discussed. Thompson did not live on the premises, nor did he have permission from the apartment manager to be there. He had been admonished or warned regarding the premises more than once and at no time offered an excuse to justify his presence. His attempts to flee or hide from Officer Britt provide circumstantial evidence of his guilt, and suggest he was not on the premises lawfully. *See State v. Friederick, supra*. Based on these facts, a rational trier of fact could have found Thompson guilty of second degree criminal trespass beyond a reasonable doubt.[4]

Lastly, Thompson claims that the evidence was insufficient to support his conviction for possession with intent to

---

[4]Thompson has assigned error to a trial court's finding that he did not know anyone at the complex between the dates of March 3 and March 10, 1991. The State makes no attempt to support this finding, and we have found nothing in the record to support it. However, we view the error as harmless because the evidence presented at trial was sufficient to convict Thompson on a charge of second degree criminal trespass.

deliver. The State concedes that under *State v. Brown*, 68 Wn. App. 480, 843 P.2d 1098 (1993), there was insufficient evidence of intent to deliver. Because the State has conceded this issue, we reverse Thompson's conviction for possession with intent to deliver controlled substances and remand for entry of judgment and sentence for simple possession. However, we express no opinion as to whether this result is mandated by our decision in *Brown*.

Judgment reversed in part.

PEKELIS, A.C.J., and AGID, J., concur.