**FILED**

**NOVEMBER 17, 2016**

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33346-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| PHILLIP JOHN MOTYKA JR., | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Phillip Motyka Jr. appeals his sentence for unlawful possession of a firearm in the first degree. He argues the trial court failed to conduct a proper *Blazina*[1] inquiry before imposing $3,561.12 in legal financial obligations (LFOs), including $2,261.12 in discretionary LFOs. He also raises numerous other arguments in his statement of additional grounds (SAG). We reject Mr. Motyka's SAG arguments, but determine that the trial court's inquiry into his current and future ability to pay discretionary LFOs was inadequate. We therefore affirm but remand for the trial court to conduct a proper *Blazina* inquiry.

---

[1] *State v. Blazina*, 182 Wn.2d 827, 830, 344 P.3d 680 (2015).

FACTS

We discuss certain facts beyond the sentencing hearing to provide a context for arguments raised by Mr. Motyka in his SAG.

Around September of 2014, Tri-Cities Metro Drug Task Force (Task Force) investigated Mr. Motyka for supplying narcotics. To assist in its investigation, the Task Force used a confidential informant (CI). The CI had participated at least three times with the Task Force in successful undercover buy operations. The CI also had prior convictions known to the Task Force. The Task Force, nevertheless, determined that the CI was reliable.

The CI performed a controlled drug buy of narcotics from Mr. Motyka under the supervision of the Task Force. To assist the operation, Detective Kevin Barton sought and secured transmission and recording authorization for a body wire worn by the CI during the controlled buy. After the controlled buy, Detective Barton submitted the body wire for postoperation judicial review. The trial court found that the authorization complied with the requirements of RCW 9.73.230 and signed the report. Based on the entire investigation, including the controlled buy with the CI, Detective Barton obtained a search warrant. The search warrant authorized law enforcement to search Mr. Motyka's property for controlled substances and all related paraphernalia, including firearms. Law enforcement executed the search warrant, and found a firearm on Mr. Motyka's property inside a locked safe.

2

On October 7, 2014, the State charged Mr. Motyka with delivery of a controlled substance—heroin. Mr. Motyka refused the State's first offer and, at the November 5, 2014 omnibus hearing, the State added two additional counts of unlawful possession of a firearm in the first degree. Shortly thereafter, Mr. Motyka agreed to plead guilty. At the November 12, 2014 plea hearing, Mr. Motyka changed his mind. The State later amended the charges, this time withdrawing one of the firearm charges.

Because the State wished to protect its CI from disclosure, the State did not provide Mr. Motyka with full discovery. Discussions occurred, and the State made clear its intent to add enhancements to the charges if Mr. Motyka insisted on "outing" the CI. On December 27, 2014, defense counsel requested full discovery after acknowledging her client understood the consequences. On January 2, 2015, the State sent additional discovery materials to defense counsel.

Mr. Motyka was granted furlough requests to leave the jail for five hours, once for January 26, 2015, and also for February 3, 2015. Mr. Motyka failed to return after his second furlough. The court issued a bench warrant. On March 13, 2015, Mr. Motyka was arrested, returned to jail, and appeared in court where bail was set at $100,000.

The State charged Mr. Motyka under a separate cause number with escape in the second degree. The State notified defense counsel that she was on its witness list. Defense counsel requested the court to appoint conflict counsel. At the April 15, 2015 omnibus hearing, Mr. Motyka pleaded guilty to the escape charge, and defense counsel withdrew her request for appointment of conflict counsel.

3

Also on April 15, 2015, the trial court signed an omnibus order requiring the State to disclose various items. The State complied with the omnibus order on April 28, 2015. The nearly two-week delay for disclosing the items was mostly due to the deputy prosecutor's prescheduled absences.

Beginning on April 22, 2015, the parties exchanged e-mails attempting to schedule an interview between defense counsel and the CI. The parties agreed to schedule the interview for 11:00 a.m. on May 8, 2015.

Mr. Motyka filed a motion to dismiss on May 4, 2015, arguing the State failed to provide a copy of the CI's contract. The State promptly requested the contract from the Task Force, and the contract was provided to defense counsel on May 5, 2015.

The trial court denied Mr. Motyka's motion to dismiss. Thereafter, Mr. Motyka apparently agreed to a stipulated facts trial in exchange for the State charging him with only one count of unlawful possession of a firearm in the first degree.

After a stipulated facts trial, the trial court convicted Mr. Motyka of unlawful possession of a firearm in the first degree. At the sentencing hearing, the State produced a letter setting forth all 16 of Mr. Motyka's prior felony criminal convictions. Mr. Motyka had signed the letter after consulting with his attorney, indicating he agreed with the crimes as a true and accurate history of his criminal history. The trial court reviewed this document with Mr. Motyka. The trial court asked Mr. Motyka, "You're employable, are you not, Mr. Motyka?" Report of Proceedings (RP) (May 20, 2015) at 3. Mr.

4

Motyka answered in the affirmative. The court then imposed $3,561.12 in LFOs, including $2,261.12 in discretionary LFOs.

## ARGUMENT

### A. OFFENDER SCORE CALCULATION

Mr. Motyka initially argued that the State did not offer supporting evidence of his prior convictions. After Mr. Motyka filed his initial brief, the State designated the letter for this court's review. In his reply brief, Mr. Motyka concedes that the State presented evidence supporting his prior convictions.

### B. UNPRESERVED LFO ERROR

Mr. Motyka argues the trial court erred when it imposed discretionary LFOs against him without adequately inquiring into his current and future ability to pay.

Whenever a person is convicted, the trial court "may order the payment of a legal financial obligation" as part of the sentence. RCW 9.94A.760(1); *accord* RCW 10.01.160(1). By statute, the trial court is not authorized to order a defendant to pay costs unless he or she is or will be able to pay them. RCW 10.01.160(3). In determining the amount and method of payment of costs, the trial court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose. *Id.* Accordingly, "a trial court has a statutory obligation to make an individualized inquiry into a defendant's current and future ability to pay before the court imposes LFOs." *State v. Blazina*, 182 Wn.2d 827, 830, 344 P.3d 680 (2015).

5

Importantly, "[t]he record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay."[2] *Id.* at 838. However, neither RCW 10.01.160 nor the constitution "'requires a trial court to enter formal, specific findings regarding a defendant's ability to pay [discretionary] court costs.'" *State v. Lundy*, 176 Wn. App. 96, 105, 308 P.3d 755 (2013) (alteration in original) (quoting *State v. Curry*, 118 Wn.2d 911, 916, 829 P.2d 166 (1992)).

"The trial court's determination 'as to the defendant's resources and ability to pay is essentially factual and should be reviewed under the clearly erroneous standard.'" *State v. Bertrand*, 165 Wn. App. 393, 404 n.13, 267 P.3d 511 (2011) (quoting *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116, 837 P.2d 646 (1991)). "'A finding of fact is clearly erroneous when, although there is some evidence to support it, review of all of the evidence leads to a definite and firm conviction that a mistake has been committed.'" *Lundy*, 176 Wn. App. at 105 (internal quotation marks omitted) (quoting *Schryvers v. Coulee Cmty. Hosp.*, 138 Wn. App. 648, 654, 158 P.3d 113 (2007)).

"A defendant who makes no objection to the imposition of discretionary LFOs at sentencing is not automatically entitled to review." *Blazina*, 182 Wn.2d at 832. Subject to three exceptions that do not apply here, RAP 2.5(a) provides that an "appellate court

---

[2] Although courts have little guidance regarding what counts as an "individualized inquiry," *Blazina* makes clear, at a minimum, the sentencing court "must also consider important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay," and "should also look to the comment in court rule GR 34 for guidance." *Blazina*, 182 Wn.2d at 838.

may refuse to review any claim of error which was not raised in the trial court." *Blazina* confirmed that an appellate court's discretion under RAP 2.5(a) extends to review of a trial court's imposition of discretionary LFOs. *Blazina*, 182 Wn.2d at 834-35.

Under *Blazina*, each appellate court is entitled to "make its own decision to accept discretionary review" of unpreserved LFO errors. *Id.* at 835. Admittedly, the judges of this court are not in agreement as to what extent discretion should be exercised to review unpreserved LFOs. An approach favored by the author, and one which another panel member is willing to accept, is to consider the administrative burden and expense of bringing a defendant to court for a new hearing, versus the likelihood that the discretionary LFO result will change. "An important consideration of this analysis is the dollar amount of discretionary LFOs imposed by the sentencing court." *State v. Arredondo*, 190 Wn. App. 512, 538, 360 P.3d 920 (2015), *review granted in part*, 185 Wn.2d 1024, 369 P.3d 502 (2016). An analysis of the appropriate factors convinces a majority of this panel that remand is necessary.

First, the dollar amount of the discretionary LFOs the trial court imposed supports granting review. The trial court imposed both mandatory and discretionary LFOs. The mandatory LFOs included the $500 victim assessment, $200 criminal filing fee, and the $100 deoxyribonucleic acid (DNA) collection fee. *See* RCW 7.68.035(1)(a); RCW 36.18.020(2)(h); RCW 43.43.7541. The trial court also imposed a $500 fine under RCW 9A.20.021. This division recently decided that a trial court may impose fines under RCW 9A.20.021 without inquiring into a defendant's ability to pay. *See State v.*

7

*Clark*, 191 Wn. App. 369, 375-76, 362 P.3d 309 (2015); *accord State v. Calvin*, 176 Wn. App. 1, 25, 316 P.3d 496 (2013), *review granted in part*, 183 Wn.2d 1013, 353 P.3d 640 (2015). These mandatory LFOs are required irrespective of Mr. Motyka's ability to pay. *Lundy*, 176 Wn. App. at 102-03. Accordingly, the discretionary LFOs that require the trial court to inquire into Mr. Motyka's ability to pay total $2,261.12.

The second factor—the administrative burden and expense of bringing Mr. Motyka to court for a new sentencing hearing—weighs against granting review. Remand is not required for the trial court to address any other sentencing errors, so the trial court would have to hold a resentencing hearing for the sole purpose of conducting a *Blazina* inquiry. Mr. Motyka is incarcerated, so the State would incur the expense of transporting him to court.

The final factor weighs in favor of granting review—a new sentencing hearing would likely change the LFO result. The only inquiry here was if Mr. Motyka could hold a job. No discussion of his debts or any other part of his financial situation took place. Because of Mr. Motyka's extensive criminal history, it is very likely he has substantial unpaid LFOs, and it is also very likely he would have substantial difficulty obtaining a job that pays more than subsistence.

For these reasons, a majority of this panel determines that we must remand for an adequate *Blazina* inquiry.

8

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

A defendant is permitted to file a pro se SAG in a criminal case on direct appeal. RAP 10.10(a). This statement is not required to cite authorities or to the record itself, but must have sufficient specificity to inform the court of the "nature and occurrence" of specified errors. RAP 10.10(c). The SAG must not rely on matters outside the record. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

A.     SPEEDY TRIAL

Mr. Motyka asserts that his speedy trial rights were violated. However, the record reflects that Mr. Motyka did not object to the time setting for trial below, and the rule clearly states that a party who fails to make such a motion within the specified time frame shall lose the right to object. CrR 3.3(d)(3). Mr. Motyka has waived his ability to contest speedy trial now.

B.     BODY WIRE

Mr. Motyka challenges the authorization of the body wire on two fronts. He claims that the body wire was not properly authorized because it was not signed by the CI, and that Detective Barton indirectly perjured himself to the trial court when seeking the authorization.

Law enforcement may in certain circumstances use a body wire conversation recording device as authorized by RCW 9.73.230. Several requirements are listed; the one at issue in Mr. Motyka's argument reads: "The names of the authorizing and consenting parties, *except that in those cases where the consenting party is a*

9

*confidential informant, the name of the confidential informant need not be divulged."* RCW 9.73.230(2)(b) (emphasis added). The CI was not required to be named on the report nor sign the report.

Mr. Motyka's claim that Detective Barton perjured himself depends on facts outside the record. When a claim is brought on direct review, this court will not consider matters outside the trial record. *McFarland*, 127 Wn.2d at 335. The record on appeal is insufficient for this court to consider Mr. Motyka's claim of perjury. If Mr. Motyka wishes to raise an issue on appeal that requires evidence of facts outside the record, he must raise them in a personal restraint petition. *Id.*

C.   SEARCH WARRANT SCOPE EXCEEDED

Mr. Motyka next argues that the search of his property exceeded the scope of the search warrant when officers opened a locked safe on his premises and found one of his firearms.

Improperly obtained evidence may be excluded from trial. The state and federal constitutions protect individuals from unreasonable searches and seizures, but a seasonable objection must be made to preserve the right. *State v. Baxter*, 68 Wn.2d 416, 423, 413 P.2d 638 (1966). A failure to move the trial court to suppress evidence is a waiver of the right to have it excluded in violation of the Fourth Amendment. *State v. Tarica*, 59 Wn. App. 368, 373, 798 P.2d 296 (1990), *overruled on other grounds by McFarland*, 127 Wn.2d 322 (discussing RAP 2.5). Mr. Motyka never moved the trial

10

court to have the contents of the locked safe excluded, so he cannot now appeal on constitutional grounds.

D.   *BRADY*[3] VIOLATION

Mr. Motyka argues that the State committed a clear *Brady* violation by withholding discovery until five days before trial. At the April 22, 2015 omnibus, the trial date was set for May 18, 2015.

The discovery that Mr. Motyka means is either the CI's contract with the Task Force, or the CI interview. The CI's contract was disclosed May 5, 2015, and the CI interview was scheduled for May 8, 2015. These dates are 13 days and 10 days before the trial, respectively.

The *Brady* rule is designed to ensure the fairness of criminal trials, and a defendant must establish three prongs to show a violation: "'[(1)] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [(2)] that evidence must have been suppressed by the State, either willfully or inadvertently; and [(3)] prejudice must have ensued.'" *State v. Mullen*, 171 Wn.2d 881, 895, 259 P.3d 158 (2011) (alterations in original) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)).

---

[3] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

11

1.    *Neither item was suppressed by the State*

Neither the CI's contract nor the CI interview were suppressed. But production of the contract and the interview were both delayed. But even if delay could be considered evidence suppression, the record explained below shows that the delay was mostly attributable to Mr. Motyka's actions.

It took until December 27, 2014 for defense counsel to request full disclosure, which included the CI's contract, from the State. The delay was due to plea negotiations, and the consequences that would follow if Mr. Motyka insisted on such disclosure.

The State delayed disclosure of the CI's contract by not disclosing the contract in January 2015. But in early February 2015, Mr. Motyka escaped while on furlough. His escape delayed the process until his arrest on the bench warrant on March 13, 2015. His escape also resulted in a new charge against him, and his counsel's request for the court to appoint conflict counsel. This request was withdrawn on April 15, 2015, after Mr. Motyka pleaded guilty to escape.

The State did not attempt to schedule an interview with the CI between early January until mid-April because of Mr. Motyka's absence and because of his counsel's conflict.

On April 15, 2015, an omnibus order was entered that required the State to produce various items. These items did not include the CI's contract. For the next couple weeks, the parties worked on scheduling the CI interview. On May 4, 2015, Mr.

12

Motyka brought a motion to dismiss for not disclosing the CI's contract. The State produced the CI's contract the following day.

For the most part, it was Mr. Motyka's own actions that delayed disclosure of the CI's contract and in conducting the CI interview. Even if delay by the State could be a form of evidence suppression, the State's delay was minimal compared to the delay caused directly and indirectly by Mr. Motyka's escape.

2.     *The delayed disclosure was not prejudicial*

Mr. Motyka fails to show or explain how he was prejudiced by the delayed disclosure. The CI contract was discussed heavily in oral argument at a hearing on the defense's motion to dismiss. The CI contract and CI's credibility also figured heavily in Mr. Motyka's CrR 3.6 suppression hearing. Neither hearing was resolved in favor of Mr. Motyka, but in light of the robust discussion of the CI contract on the record, there is no indication that Mr. Motyka suffered any prejudice.

E.     CONFIDENTIAL INFORMANT

Mr. Motyka asserts that the CI was not credible, so that the search warrant issued was not supported by probable cause.

A magistrate exercises judicial discretion in determining whether to issue a warrant, and that decision is reviewed for abuse of discretion. *State v. Vickers*, 148 Wn.2d 91, 108, 59 P.3d 58 (2002). Doubts are resolved in favor of the search warrant, and great deference is shown to the issuing magistrate. *Id.* at 108-09. "Probable cause is established in an affidavit supporting a search warrant by setting forth facts sufficient for

13

a reasonable person to conclude the defendant probably is involved in criminal activity". *State v. Huft*, 106 Wn.2d 206, 209, 720 P.2d 838 (1986). Under circumstances where an informant's tips lead to the issuance of a search warrant, Washington follows the *Aguilar-Spinelli*[4] test requiring that the affidavit must demonstrate the informant's (1) basis of knowledge and (2) veracity. *Vickers*, 148 Wn.2d at 112. Even if the test failed, probable cause can still be established by independent police investigation. *Id.*

Mr. Motyka's theory appears to be that the CI failed the veracity prong of the test for search warrants based off an informant's tips. The CI had a history of criminal acts and drug abuse and the CI's contract with police was terminated after this operation. However, the record shows that there was diligent independent police investigation, more than sufficient to cure any deficiency, as the entire body wire operation was designed to corroborate the informant's tip. Any deficiency in the CI's credibility was cured by the independent police investigation. There was no abuse of discretion by the trial court.

---

[4] *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), *abrogated by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), *but adhered to by State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984).

Affirm but remand for a proper *Blazina* inquiry.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Korsmo, J.

15